UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| TIMOTHY G. O'BRYANT | CIVIL ACTION |
| VERSUS | NO. 16-13203 |
| GRAY INSURANCE COMPANY, ET AL | SECTION "N" (1) |

## ORDER AND REASONS

Before the Court is Defendants' Motion in Limine to Exclude/Limit Plaintiff's Liability Expert, Leslie Eschete (Rec. Doc. 98). This motion is opposed by Plaintiff (Rec. Doc. 112). Defendants, The Gray Insurance Company, Longnecker Properties, Inc., ENI US Operating Company, Inc. and SEACOR Marine LLC, maintain that Mr. Eschete lacks the requisite expertise to offer the opinions set forth in his report, and further, that such opinions are unfounded and inadmissible under Federal Rule of Evidence 702 and *Daubert*.[1] For the reasons stated herein, the motion is **GRANTED**.

**LAW AND ANALYSIS**

Under Rule 702 of the Federal Rules of Evidence,

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Thus, under Rule 702 and *Daubert*, a court "must ensure the expert uses reliable methods to reach his opinions[,] and those opinions must be relevant to the facts of the case." *Guy v. Crown*

---

[1] *Daubert v. Merrell Dow Pharm., Inc.,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 238 (1999).

*Equip. Corp.*, 394 F.3d 320, 325 (5th Cir. 2004). Reliability and validity must be demonstrated by evidence that the knowledge is more than speculation. *Daubert*, 509 U.S. at 590. An evaluation or analysis of reliability must be flexible, as "[t]he factors identified in *Daubert* may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of his testimony." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150, 119 S. Ct. 1167, 1175, 143 L. Ed. 2d 238 (1999).

> With respect to relevancy of expert testimony,
>
> [T]he proposed testimony must be relevant "not simply in the way all testimony must be relevant [pursuant to Rule 402], but also in the sense that the expert's proposed opinion would assist the trier of fact to understand or determine a fact in issue." *Bocanegra v. Vicmar Servs. Inc.*, 320 F.3d 581, 584 (5th Cir.2003). There is no more certain test for determining when experts may be used than the common sense inquiry whether the untrained layman would be qualified to determine intelligently and to the best degree the particular issue without enlightenment from those having a specialized understanding of the subject involved in the dispute." *Vogler v. Blackmore*, 352 F.3d 150, 156 n. 5 (5th Cir.2003) (quoting Fed. R. Evid. 702 advisory committee's note).

*Kennedy v. Magnolia Marine Transp. Co.*, 189 F. Supp. 3d 610, 615 (E.D. La. 2016). Thus, if a jury "could adeptly assess [a] situation using only their common experience and knowledge," it is within the discretion of the trial judge to exclude the expert testimony. *Peters v. Five Star Marine Serv.*, 898 F.2d 448, 450 (5th Cir. 1990).

Assuming without deciding that Mr. Eschete is, in fact, an expert in maritime industry areas, including maritime safety and the duties of a captain of a vessel similar to the one involved in this case, the Court turns to the specific opinions offered by Mr. Eschete regarding the November 14, 2015 incident on board the *M/V CLAY ELLA*, in which plaintiff Timothy G. O'Bryant claims to have injured himself as a result of slipping and falling in the shower on board the vessel. Mr. Eschete offers five opinions associated with this incident:

> 1. This incident was completely avoidable. Had the LPI dispatcher followed instructions and not ordered the *M/V CLAY ELLA* to sea; no injury(s) to Mr. O'Bryant would have occurred.

2

2. The captain/operator of the *M/V CLAY ELLA* should have informed, notified, alerted the riggers/personnel on the vessel of the course change during the prevailing sea conditions; Mr. O'Bryant would not have been injured.

3. Handrails and/or grab-bars should have been provided in the larger than normal shower stall of the *M/V CLAY ELLA*.

4. Sufficient non-skid and/or flooring should have been provided in the shower stall(s) on the *M/V CLAY ELLA*.

5. No evidence/documentation has been produced ensuring an Offshore Worker Orientation was given prior to the *M/V CLAY ELLA* departing for sea.

*See* Eschete Report, p. 19; *see also* Rec. Doc. 98-2, p. 11.

Mr. Eschete's opinions are problematic for several reasons. Even before considering Mr. Eschete's opinions, the Court notes that they are based upon his examination of thirteen photographs of a shower stall, provided by plaintiff's counsel, represented to be the shower stall in which O'Bryant was injured on November 14, 2015. Mr. Eschete admitted that he had no knowledge as to who took the photographs and when the photographs were taken; thus there is no evidence, and no reason to believe, that the photographs accurately represent the condition of the shower stall on November 14, 2015. And though he has a great deal of experience in the maritime industry, and cites to certain OSHA provisions that might be pertinent for consideration, he does not apply those provisions to formulate opinions which cannot be discerned by a lay person juror.

Even so, Eschete's individual opinions are not helpful. For instance, in his first opinion, Mr. Eschete claims that "this incident was completely avoidable", because the *M/V CLAY ELLA* should not have been put to sea. Of course, this opinion is not helpful because any number of hypothetical "but for" events or avoidances could be cited: (1) had Mr. O'Bryant not been working that day, he would not have been injured; (2) had Mr. O'Bryant not taken a shower until the vessel docked, he would not have been injured; (3) had Mr. O'Bryant chosen to be employed in a different field altogether, he would not have been injured; or (4) had the weather that day been different, he would

3

not have been injured. Whether ill-advised or not, the vessel put to sea in the existing conditions, and everyone aboard who did not choose to take a shower in those conditions was uninjured. Thus, to say that an incident "was completely avoidable", begs the question of whether a defendant or group of defendants have liability for any such injuries resulting. In other words, every incident is "avoidable", but not every incident is borne of negligence or results in the attachment of liability to another party. There is no evidence, and no supported opinion, that the vessel captain or anyone else committed acts or omissions that fell below the expected care to be exercised.

Secondly, Eschete claims that the captain of the vessel "should have informed, notified, alerted the riggers/personnel on the vessel of the course change during the prevailing sea conditions", in which case he contends the plaintiff would not have been injured. This opinion, however, is not borne out by the evidence, as plaintiff fails to cite any testimony, and provides no affidavit whatsoever, that he would have acted upon such information and declined to take a shower at the time he did. The opinion does not relate the purported course change to the alleged slip and fall in the shower. In fact, the plaintiff's testimony is quite to the opposite: plaintiff asserted that he takes showers in the morning and was determined to take one on the morning of November 14, 2015, without regard to the prevailing sea conditions, which were readily apparent to him and everyone else on the vessel. In fact, it is undisputed that Mr. O'Bryant was very familiar with the *M/V CLAY ELLA*, had worked on it for approximately four years during which time he used the same shower frequently, and readily was aware of its size and provisions. He also was a veteran crew member who was well-capable of assessing obvious sea and weather conditions for his own safety when deciding to take a shower on board while underway. Furthermore, the opinion fails to establish that the course change was improper or negligent, nor does it explain what standard procedures or operations should have been conducted by the crew had such notification been given. Thus, there is

4

no foundation for employment of an expert's applied knowledge to formulate an opinion outside the realm of a lay person juror.

As to his third opinion, Eschete claims that not only was the shower stall "larger than normal", it had no "handrails and/or grab-bars." Although Mr. Eschete compared this vessel's shower size and handrail/grab-bar provision with that of many other vessels upon which he served, he does not indicate that the *M/V CLAY ELLA's* shower was inadequate, ill-equipped, or particularly unsafe based upon any requirements or guidelines, including OSHA provisions. Simply stating that other vessels had different – and better, in his opinion – provisions is not an insightful opinion imparting particularized knowledge from an expert to a lay person juror. Of course, the presence of handrails and/or grab-bars is readily apparent, even to a lay person, and especially to an experienced crew member like Plaintiff.

Eschete also finds that the non-skid and/or flooring was not "sufficient." He again cites no requirements or guidelines defining what would be "sufficient", and concedes that in fact there was some non-skid flooring in the shower. Other than viewing photographs, Eschete does not offer an opinion as to whether this insufficiency was based upon the quality (type or thickness) of the non-skid provided, the age of the non-skid, or whether more non-skid should have been in the shower area. Eschete simply describes the non-skid and/or flooring as not being "sufficient", in his opinion, based upon his viewing of showers on vessels over the course of his career.

Lastly, Eschete claims that "no evidence/documentation has been produced ensuring an Offshore Worker Orientation was given prior to the *M/V CLAY ELLA* departing for sea." Assuming Eschete is factually correct, his opinion remains unhelpful: he fails to state what such orientation would include.[2] Eschete does not claim that such an orientation would include instructions on when

---

2   After stating that an orientation should be given to riggers each time there were changes in personnel or the vessel got underway on a voyage, Mr. Eschete simply makes a statement that, "JSAs (a.k.a. Safety Meetings) should have included reminders for all personnel on the *M/V CLAY ELLA*

5

to take a shower and/or how to take a shower in rough seas. There is no evidence to suggest that the plaintiff, had such specific instructions been given at an orientation, would have heeded these directives as to when he could take a shower. There is nothing in Eschete's report indicating that any Offshore Worker Orientation would include safety considerations to be taken into account when showering onboard a vessel underway.

Accordingly, Defendants' Motion in Limine to Exclude/Limit Plaintiff's Liability Expert, Leslie Eschete (Rec. Doc. 98) is hereby **GRANTED**.[3]

New Orleans, Louisiana, this 18th day of October 2017.

                                                  **KURT D. ENGELHARDT**
                                                  **United States District Judge**

---

that the showers did/did not have handrails and/or grab-bars installed or raised flooring." However, Mr. Eschete does not provide any information as to what an orientation customarily includes or otherwise elaborate on the substance of such orientation.

     Rather, Mr. Eschete cites to a regulation relating to "Safety Orientation for Offshore Workers," specifically regarding public announcements on "any conditions or circumstances that constitute a risk to safety" before a vessel gets underway on a voyage. However, Mr. Eschete then goes on to discuss the *M/V CLAY ELLA's* changing course with no warning in rough seas as "the obvious safety risk" and how Captain Dianna Thompson arguably "should have known that she should advise, warn, alert, personnel aboard the vessel prior to a course change in foul weather."

[3]     The Court notes the ruling in *Trosclair v. Abdon Callais Offshore, LLC*, Civil Action No. 08-3824, 2010 WL 797857, at *1 (E.D.La. Mar. 2, 2010), which addresses an expert report by Mr. Eschete. In allowing for a supplemental report by Mr. Eschete to be admitted, the Court stated,

> With regard to the supplemental report, the Court agrees with much of the ACO's substantive criticisms that Eschete's opinions stretch if not breach the proper scope of expert testimony. However, the Court is also mindful that it is the fact finder in this matter. The Court cautions the plaintiff that his expert testimony should stay within the bounds of Fed.R.Evid. 702 or risk having his testimony disregarded entirely.

*Id*.